GATES v. GATES et al.

(Supreme Court, Appellate Division, Third Department. November 16, 1898.)

1. AGREEMENT TO WILL PROPERTY—SPECIFIC PERFORMANCE.

Specific performance of one's agreement to leave property to another by will may be enforced, where the promisee has performed his part, and the contract is certain and definite, and clearly established, and free from objections for inadequacy of consideration, or other circumstances rendering the claim inequitable.

2. SAME—INDEFINITENESS.

Where one, in substance, agreed to make a child, which he had taken from its mother to rear as his own, an heir, and to give him the same interest which a son would have in whatever property the promisor owned, or might have, at the time of his decease, it is not so indefinite, or impossible of performance, that specific performance thereof will not be enforced.

8. MISJOINDER OF CAUSES OF ACTION.

A complaint for specific performance of an agreement to make one an heir, and to give him the same interest which a son would have in whatever property the promisor owned, or might have, at the time of his decease, alleged the agreement, and averred that plaintiff was the only heir, and therefore entitled to possession of the property of the promisor. *Held* not subject to a demurrer for improperly joining two causes of action.

Appeal from special term, Cortland county.

Action by Floyd E. Gates against Alvira B. Gates and others. Defendants' demurrer to the complaint was overruled, and they appeal. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

B. A. Benedict, for appellants.
Nathan L. Miller, for respondent.

PARKER, P. J. It was said by Justice Barrett in the case of Gall v. Gall, 64 Hun, 601, 19 N. Y. Supp. 332, that "it is undoubtedly the settled law of this state that 'where a certain and definite contract is clearly established, even though it involves an agreement to leave property by will, and it has been performed on the part of the promisee, equity, in a case free from all objections on account of the adequacy of the consideration or other circumstances rendering the claim inequitable, will compel a specific performance' "; and such case was affirmed without opinion in 138 N. Y. 675, 34 N. E. 515. This case, and the authorities therein cited, are direct authority for granting the relief asked for in the case at bar, provided the contract relied upon is sufficiently definite. See, also, Godine v. Kidd, 64 Hun, 585, 19 N. Y. Supp. 335. That the contract was actually made in the terms set forth in the complaint, and fully performed on the

part of the promisee, must, upon this demurrer, be assumed; and that it involves an obligation on the promisor's part to leave property by will is no objection to its specific performance. But whether the contract, as thus set forth, is of that certain and definite character which is requisite in order to compel a specific performance, is the serious question in this case, and one over which I have great doubts. The substance of the contract on deceased's part was "to make the child an heir, and to give him the same interest which a son would have in whatever property he owned, or might have, at the time of his decease." A literal construction of this language leaves it exceedingly uncertain what the promisor has undertaken to do. At the time the contract was made, there was no method known by which Alonzo W. Gates could make the child·his "heir," in the accurate and legal signification of that term. By no proceeding known could he imbue him with the legal capacity to inherit. Moreover, if he had been able to do so, that promise, literally taken, involves no agreement to not disinherit him. Though made an heir, he would not thereby have acquired any certain right to any part of Alonzo Gates' estate.

The further agreement, to "give him the same interest which a son would have," is also open to the same criticism. A son, by strict legal right, has no interest whatever in his father's estate. He may be given a greater or lesser portion thereof, as the father shall desire, or he may be entirely disinherited. A promise to give one "the same interest which a son would have" in the promisor's estate, literally construed, is but a promise to give whatever the promisor chooses to give.

And the objection is very forcibly urged upon us by the appellants' counsel that such a promise is of such an indefinite and uncertain character that it is not one which equity could, or under its well-settled rules will attempt to, specifically enforce. 22 Am. & Eng. Enc. Law, p. 1006. It cannot be doubted, I think, but that the parties to this contract understood that Alonzo Gates was not only to adopt the child, and rear him in his own family, as if he was his own son, but that upon his decease he was to leave him some portion, at least, of the property which he might then own. The mother parted with her child upon that understanding, and the child, during all the years that Gates lived, took his name, and seems to have at all times recognized and faithfully performed those duties which, as a son, would be due from him to Gates as his father. Both parties seem to have fully performed the contract up to the time of Gates' death, and the only breach complained of is that Gates has never performed that part of it relating to the disposition of his property after his death. Though the literal meaning of the words used do not import such an agreement, the force that is given to them in their general and popular use, and all the circumstances of this case, indicate that such must have been the intent of the parties. An agreement to make a child one's heir, and to give him a son's interest in his estate, if the mother would part with him then, certainly does not indicate an arrangement under which the child is to receive nothing whatever from the estate. There was no object or reason for making any

promise upon that subject, if it was to have no other meaning than that Gates should be at liberty to give him a portion of his estate if he so desired. Undoubtedly both parties understood those words as a promise to give the child some portion of the estate, upon Gates' death; and the question is, what portion of the estate can it be fairly said Gates was thereby obligated to give? Does the language used specify with sufficient precision the share which Gates thereby became obligated to give, to authorize a specific performance of it?

Assuming that the parties understood that the child was to have some portion of the estate, we are led naturally, I think, to the conclusion that he was to have such a share as a son would be entitled to, as an heir, if the estate were divided among such children as Gates might have at the time of his death. The share which an heir would take suggests equality with other children; and, on the supposition that Gates was to give the child some share, the whole context fairly indicates that he was to give him such a share as he would be entitled to under the statute of descents. In other words, though he could not literally make him his heir, he could by will give him the same share which as his son he would inherit, and such I conclude to be the fair construction of the language used. So construed, there is no difficulty in specifically performing it. Gates, at the time he died, had no children nor descendants living. The plaintiff, therefore, if he could have inherited, would, as an heir, have been entitled to the whole estate, and under the contract Gates should by testamentary devise have given him the whole. Not having done so, a decree may be made against those who have succeeded to his title, requiring them to make the proper conveyance. Colby v. Colby, 81 Hun, 221, 30 N. Y. Supp. 677. Under this construction, the contract did not require Gates to give all his property to the plaintiff, to the exclusion of his own children, and therefore it is not obnoxious to the criticism that it was against public policy, and for that reason should not be enforced. I therefore conclude that there is a cause of action set up in the complaint.

Upon the question as to whether two causes of action are improperly joined, I do not think that the amended complaint is obnoxious to that charge. The only cause of action set forth is the one based upon the contract. The averment that he was the only heir, and therefore entitled to the possession of the property, is the averment of a mere conclusion, and one that is clearly negatived by the facts which are elsewhere set forth. But if any cause of action, other than that on the contract, is set forth, it is one arising out of the same transaction, and hence the demurrer cannot be sustained upon that ground.

My conclusion is that the interlocutory judgment, overruling the demurrer, should be affirmed, with costs, and leave should be given defendants to answer over upon payment of the same, within 20 days after notice of this order. All concur.