Otto M. Doppmann, Appellant, *v.* Charles Muller, as Committee of the Estate of Helena M. Doppmann, Incompetent, and Peter J. Richrath, Respondents.

Second Department, March 31, 1910.

**Parent and child — adoption — contract — agreement to give legacy to adopted children — contract construed — right of foster parent to make unequal bequests.**

When a foster parent on adopting two children from an orphan asylum agreed that "provision shall be made by *Will * * ** giving to such adopted child a *reasonable* share" of his estate, "such as would be given if he were the father of said child," he was not bound to divide his estate among them in the same proportion they would receive as heirs.

He was bound only to give such reasonable share of the estate as a parent would give, and, hence, where the estate was small and one of the children, a male, married and was self-supporting, while the other, a female, was of weak mind and unable to care for herself, a will giving one dollar to the adopted son and the remainder to the daughter was reasonable and within the contract.

Appeal by the plaintiff, Otto M. Doppmann, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Kings on the 17th day of February, 1909, upon the decision of the court, rendered after a trial at the Kings County Special Term, dismissing the complaint upon the merits.

*Charles H. Kelby,* for the appellant.

*Edmund F. Driggs,* for the respondents.

Judgment affirmed, with costs, on the opinion of Mr. Justice Carr at Special Term.

Woodward, Jenks, Burr, Thomas and Rich, JJ., concurred.

The following is the opinion delivered at Special Term :

Carr, J. :

On November 1, 1887, one Charles Doppmann and his wife entered into a written agreement with the Managers of the Orphan Asylum Society of the City of Brooklyn, whereby that institution surrendered to Doppmann the custody of a child, one Otto Muller, then eleven years of age, during his minority. The agreement contained, among other things, the following provisions : " While this [agreement] has the full legal force of an indenture, it is further understood by and between the parties to this instrument that it shall be *in fact* an *adoption* of the child by the party of the second part [Doppmann], he obligating himself to do for and by such child in all respects as if he were its father ; and that said child shall stand in that relation to him in every particular. But to avoid all questions in regard to the validity of such agreement in respect to inheritance or right as distributee, it is hereby agreed that provision shall be made by *Will* by the party of the second part giving to such adopted child a reasonable share of his estate, such as would be given if he were the father of said child." At or about the same time a precisely similar agreement was made with relation to another child, Helena Muller, the sister of Otto Muller.

Doppmann took the custody and care of both children and they remained with him during their minorities and for some time thereafter and assumed his name and became to him in fact as if they were his children. The boy, Otto, some time after coming of age, left Doppmann, married and started off in life independently. The girl, Helena, remained with Doppmann until he died in July, 1906. On November 27, 1905, Doppmann made a will in which he left Otto, the plaintiff herein, the sum of one dollar, and in which he gave the the rest of his estate of the value of about $8,000 to Helena. This action is brought by Otto against Helena, who is the executrix of said will, to secure a judgment decreeing the specific enforcement of the adoption agreement as to Otto in such manner as to give him one-half of the estate of the decedent. His theory is that by the agreement above recited, Doppmann bound himself to make provision by will for him to the same extent as one of the testator's children should take under the Statutes of Descent or Distribution, if there was no will. While there are several precedents in this State for the maintenance of an action for specific performance of agree-

ments of this nature, there is none relating to a precisely similar agreement. In *Gates* v. *Gates* (34 App. Div. 608) a decedent had taken the surrender and custody of a minor child from its mother under an agreement by which he bound himself to make the child "an heir * * * and to give to him the same interest which a son would have in whatever property he owned or might have at the time of his decease." The decedent died leaving no issue and intestate. It was held that the child in question was entitled to a decree against the decedent's representatives for the whole amount of the estate. The court proceeded on the theory that the language of the agreement must be so construed as if it were written that the child "was to have such a share as a son would be entitled to as an heir, if the estate were divided among such children as Gates might have at the time of his death." It is to be noted that in that case Gates, the decedent, died without issue and intestate.

In *Brantingham* v. *Huff* (43 App. Div. 414) a precisely similar agreement was considered, and the court there, while following the *Gates* case, declared: "If such contracts are to be upheld, the condition of children received under these agreements would seem infinitely preferable to that of one adopted under the statute or a child of a testator's loins; for neither of the latter has any indefeasible right to share in the estate of a parent, and either might be entirely disinherited. We express no opinion of our own on the question, but shall follow the decisions of this court in the other departments." It must again be noted that in that case the decedent left no issue and died intestate.

In *Winne* v. *Winne* (166 N. Y. 263) the court upheld a decision of specific performance, where a decedent who died without issue and intestate had taken the custody of a minor child from its mother under a written agreement whereby the decedent, Mrs. Winne "was to have, and the mother of the plaintiff was to surrender to her, the custody and control of the plaintiff; Mrs. Winne was to keep and maintain him as her own child, and at her death give him all her property and make him her sole heir, and his mother was to have nothing more to do with him" (opinion of court). In that case the court declared: "While we are of the opinion that specific performance of this contract was properly awarded, this decision is based solely upon the findings of the trial court, and the particular facts

and circumstances of this case. Yet it must not be regarded as an authority for maintaining such an action under different circumstances or upon other proof, as the granting or denial of such relief always rests in the sound discretion of the court, and should be denied unless the agreement is fair and just and its enforcement equitable."

The agreement and the circumstances in the case at bar seem to me materially different. Here the agreement was not to make the child an " heir " or give him such share as the son would have " *as an heir* " if the estate was divided among the children as heirs (*Gates* case), nor to give him all the property which the decedent possessed (*Brantingham* case and *Winne* case), but that provision should be made by *will* by the party of the second part giving to such adopted child *a reasonable share of his estate such as would be given as if he were the father of said child.* I think this language fell very far short of depriving the decedent of such power of testamentary disposition as seemed to him " reasonable " in view of the size of his estate and the nature of other claims upon his bounty. What was " reasonable " under the particular circumstances was for him to determine primarily. The provision he made for the plaintiff was merely nominal, but the fact that any provision for or mention of the plaintiff was made in the will shows that the decedent had weighed the plaintiff's claim upon him as " if he were the father of said child." At first sight it would seem that the decedent's testamentary preference for the plaintiff's sister, Helena, by giving her the entire estate had excluded the plaintiff from a " reasonable share of his estate." If there were no facts explaining this circumstance, it would seem as if the decedent had failed to keep his agreement as to the plaintiff, Otto. Here, however, are to be found circumstances readily explaining the apparent discrimination. The estate was quite small. Helena had remained with the decedent several years after Otto had left him; she had during the decedent's lifetime suffered from mental disturbances and had been confined in an insane asylum. She was less fit than Otto to face the world and more exposed to contingencies which would require the use of such little estate as the testator had. He might well contemplate a recurrence of the mental disorders in Helena and the need of his whole estate, small as it was, to provide for her care and comfort

during her lifetime. In fact such recurrence has happened, and Helena, having been adjudged an incompetent, is now present in this action by her committee. Any father having two children, one a sturdy man of full age and the other a daughter of feeble mind, might have reasonably made a precisely similar disposal of a small estate, without being subject to just criticism as having acted unreasonably. To me it seems that the will of the decedent is not a breach of the agreement sued upon, and that such agreement did not absolutely bind him to give to the plaintiff any definite part of his estate and so deprive him of the right of making such testamentary disposition of his property as seemed to him " reasonable " under the particular circumstances.

Judgment is directed for the defendant.