Edith SPIEGEL and Ted S. Spiegel, a minor, etc., Plaintiffs,

v.

Arthur S. FLEMMING, Secretary of Health, Education and Welfare, Defendant.

Civ. No. 34534.

United States District Court
N. D. Ohio, E. D.
Jan. 12, 1960.

Morris Berick, Frank Spiegel, Cleveland, Ohio, for plaintiff.

Russell Ake, U. S. Atty., G. W. Morrison, Asst. U. S. Atty., Cleveland, Ohio,. for defendant.

McNAMEE, District Judge.

This action is brought under favor of Section 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g) (hereinafter referred to as the Act), to review a decision of the Secretary of Health, Education and Welfare (hereinafter the Secretary) denying plaintiff's application for mother's insurance benefits for herself and benefits for her adopted child, Ted S. Spiegel, for the period commencing February 1956 to and including August 1, 1958. Effective September 1958 Congress amended Section 216(e) of the Act, 42 U.S.C.A. § 416(e), enlarging the definition of an adopted

child to include a child of a wage earner who was adopted by the wage earner's surviving spouse within two years after the wage earner's death. Pursuant to such amendment, plaintiff filed a separate application in September 1958 and has been receiving benefits under the amendment since that time.

The controversy here involves the plaintiff's right to benefits under the Act prior to the effective date of the 1958 amendment. Plaintiff's application for such benefits was denied by the Referee and her request for administrative review was denied by the Appeals Council, thereby constituting the Referee's decision as the final decision of the Secretary. Both parties have filed Motions for Summary Judgment.

▇ There is no dispute as to the facts found by the Referee. The relevant facts are: On August 5, 1954, plaintiff and her deceased husband executed and filed with the Jewish Children's Bureau of Cleveland, an authorized adoption agency under Ohio law, an application to adopt a child, no designation of any particular child being made. Ted E. Spiegel, the child here involved, was born over a year later on August 23, 1955 and placed in the home of plaintiff and her husband on September 6, 1955. At that time the plaintiff and her husband took the child with the intention of adopting him and he remained in their home and was entirely supported by plaintiff and her husband until the latter's death on February 6, 1956. At the time of the placement of the child it was explained to the wage earner and plaintiff that there would be a six-month period before adoption could be undertaken; that during that period the social agency would "service" the family; and if the family and child adjusted satisfactorily, legal adoption would be undertaken after the end of the six-month period. The Referee found there was no complete surrender of the child by the agency to the wage earner and his wife; that the agency did not consent unconditionally to a legal adoption by them; that during the wage earner's lifetime the agency technically had the right to reclaim the custody of the child; and that plaintiff and the wage earner had the right to return the child to the agency. No adoption proceedings were commenced prior to the death of the wage earner but nine months after his death the child was legally adopted by the plaintiff. The pivotal questions are whether at the time of the wage earner's death Ted E. Spiegel was a child within the meaning of the Social Security Act and whether at that time he was entitled under the law of Ohio to inherit personal property from the wage earner. Section 202(g) of the Act, 42 U.S.C.A. § 402(g), provides mother's insurance benefits for the widow of an individual who died fully or completely insured if such widow "(E) at the time of filing such application has in her care a child of such individual entitled to a child's insurance benefit." At the time of the wage earner's death, in pertinent part, Section 216(e) of the Act defined child as follows:

"The term 'child' means (1) the child of an individual * * * and (3) in the case of a deceased individual, (A) an adopted child, or (B) a stepchild who has been such stepchild for not less than one year immediately preceding the day on which such individual died. * * "

Section 216(h) (1) of the Act provides in part:

"In determining whether an applicant is the * * * child, * * * of a fully insured or currently insured individual for purposes of this title, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property * * *, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death * * *. Applicants who according to such law would have the same status relative to taking intestate personal property as a * * * child, * * * shall be deemed such."

■ In Ohio an adopted child has the same rights under the law of intestate succession as a child born in lawful wedlock. 1 Ohio Jur.2d, § 24, pp. 648–649. Under Revised Section 3107.09, Rev.Code of Ohio, however, no statutory adoption may be effected under Ohio law until after the child has resided in the home of petitioners continuously for six months prior to the date of the court hearing.

■ As shown above, Ted E. Spiegel was in the home of plaintiff and her deceased husband less than six months prior to the latter's death. Plaintiff contends, however, that the doctrine of equitable adoption is recognized in Ohio and is applicable under the facts of this case. The doctrine of equitable adoption rests upon the salutary principle expressed in the maxim "Equity regards that as done which ought to have been done." This principle is invoked usually where a contract or agreement of adoption has been performed on the part of the child or those who agreed to the adoption on his behalf and there has been a failure by adopting parents to comply with the statutes governing adoption. Thus, in the cases of Snyder v. Shuttleworth, 5 Ohio App. 137 and Sunior v. Sunior, 20 Ohio App. 476, 152 N.E. 729, written contracts of adoption were fully performed by the child. In each of the cited cases the adopted child had reached his majority and in each case suit was brought more than 30 years after the adoption contracts were executed. Although no legal or statutory adoption had been effected in either case, it was held upon principles of equity that the adopted plaintiffs were entitled to share in the estates of the deceased adopting parents. The cited cases are of no aid to the plaintiff. In the case under review there was no contract to adopt and the adoption of Ted Spiegel could not have been effected prior to the wage earner's death. The critical facts that justified the application of the principle of equitable adoption in the cited cases are absent in the case under review. Herd v. Folsom, 7 Cir., 231 F.2d 276, cited by plaintiff is inapposite. The plaintiff in that case was a divorced woman with four children by a first marriage and none by her second marriage. She was denied relief as a surviving spouse on the ground that she was not the "widow" of her second husband within the meaning of the Social Security Act. Plaintiff also relies upon Kilby v. Folsom, 3 Cir., 238 F.2d 699, 60 A.L.R.2d 1065. While that case is somewhat analogous on its facts, it is nevertheless clearly distinguishable. In that case the court found an unconditional relinquishment by the natural mother of all claims to the child. The court also held that the Kilbys had entered into a contract with the natural mother to adopt the child. The court said:

"* * * By this paper the mother stated that the child had been given by her to Mr. and Mrs. Kilby 'to be adopted by them as soon as is legally permitted' and relinquished all claims she had to the child. The Kilbys immediately assumed responsibility for the little girl. They sent out announcements of her birth as if born to them; Mr. Kilby made Jane a contingent beneficiary of his life insurance policies which ran to Mrs. Kilby as beneficiary. He claimed her as a dependent 'daughter' in his income tax return. The Kilbys gave the child their own name and in all respects treated her as their own." [238 F.2d 700.]

The opinion does not disclose the length of time the child was in the Kilby home before Mr. Kilby died. But it is shown that the adoption proceedings were not completed before his death. However, the court held that:

"There seems no difficulty in finding a consensual transaction between the natural mother and the foster parents."

Folsom v. Furber, 6 Cir., 256 F.2d 120, involved the rights of children under a common law marriage and is not in point.

There can be no doubt that in the case at bar, the Spiegels intended to treat the child as their own and to adopt him. The evidence discloses, however, that at the

time of the wage earner's death plaintiff and her husband were not bound to adopt the child. Nor was the placement agency bound to relinquish the child to the Spiegels. Moreover, at the time of the wage earner's death, Ted E. Spiegel was not a child within the meaning of Section 216(e) then in effect and at that time he was not entitled to share in the wage earner's estate under the Ohio law governing the inheritance of personal property.

Regrettably this is not a case which in the exercise of discretion may be decided by the Court upon humane considerations or upon principles of natural justice. To so decide it would be contrary to the law applicable to the admitted facts. Congress did not make the 1958 amendment to Section 216(e) retroactive and of course this Court is without power to do so.

Plaintiff's motion for summary judgment is overruled.

Defendant's motion for summary judgment is granted.